We have a busy morning this morning. We have five cases that we're addressing today. One is on the briefs, and we've received the briefs and are moving forward with that. The other four cases are set for oral argument this morning. The first case is Sullivan v. McDonald, 15-7076. Mr. Dojaquez? Yes, sir. Did I pronounce your name correctly? Dojaquez. Dojaquez. Yes. OK. I understand you reserved three minutes of your time for rebuttal. Is that correct? All right, you may proceed. Thank you, sir. May it please the court, my name is Kenny Dojaquez. I'm here representing Mr. Sullivan. The issue in this case is the extent of the VA's duty to assist with regard to VA medical records under 3.159C3. And the issue really revolves around whether the records must be relevant before the duty to assist would apply. Well, you did not, am I remembering correctly, did not make the argument to the Veterans Court that relevance was not necessary, only that there hadn't been a sufficient determination and explanation of it? Yes, Your Honor, that's correct. Why is that not a waiver problem for this argument? Yes, sir. Under the jurisdictional statutes, I think that this corpse case in Morgan, they looked at whether under 792, I think it was A, created the case jurisdiction after the amendment to the jurisdiction. And I think it's analogous here because this court ruled that the jurisdiction created kind of a case jurisdiction issue. Can I just go about it this way? Let's suppose for a minute that on the assumption that relevance was the standard, that I thought it was a problem that the Veterans Court appears to have decided relevance for itself incorrectly as a matter of law because it's a factual matter and that we were remanding. At that point, I assume we could say, by the way, when it goes back to the board, apply the correct standards. And if we got to that and also accepted your view that when the records are VA records, there's no relevance requirement, nevertheless, there's a materiality standard and then the standard of, what is it, subsection D that says if there's no reasonable possibility of it substantiating the claim, the inquiry can stop. What difference would there be between that formulation and relevance? Let me try to understand the question. So you're asking if... The first part of it is maybe waiver doesn't matter if we're sending it back anyway. And the second part of the question is even if relevance is not part of, what is it, is not required to get the VA records as opposed to all the other medical records that are in the list, nevertheless, the secretary doesn't have to do that, can indeed the regulation directs the secretary to refrain from, I think is the word, from getting records if there's no reasonable possibility that it would substantiate the claim. And I'm trying to understand, is there any substantive difference between relevance and that subsection D standard about no reasonable possibility, blah, blah, blah? Yes, sir, I think that there is. And the relevance, I think, is a much broader class of evidence. When you look at that term, no reasonable possibility is substantiating the claim. First, in the statute itself, it's attached to when the assistance, it actually defines assistance. And we're looking at 5103A, big A, I'm sorry, I think it was D, no. Two. I'm sorry, yes, sir, two. If no reasonable possibility exists, that such assistance would aid in substantiating the claim. And so when you look at both the statutory history in Congress, as well as many of the Federal Register entries that the secretary, when promulgating the regulations, they talked about specifically where the assistance cannot aid in substantiating the claim because there's no legal basis for the claim. And that's where the difference is. With relevance, the evidence becomes, does it inform the decision maker on this particular factual issue? Well, I can understand how relevance has to be broader than reason, a reasonable possibility of assisting with the claim because it could be, could have a substantial role in defeating the claim. You've got no interest in that side of relevance. How could it be relevant in a way that would be helpful to the claim unless it, considered with everything else, created a reasonable possibility of substantiating the claim? Well, I think before you get to that, Your Honor, you have to know what's in the records. And I think the limited information in this case... Well, is that true? I mean, do you have to know exactly what's in the record in order to determine whether there's relevancy? Let's say that the, it's shown that the record has to do with some activity before the FCC. Yes, sir. Yes, Your Honor. There, obviously there are some evidence that on their face have nothing to do with the claim. And I'm not suggesting that all evidence is required to be obtained by the VA. This is specifically to VA medical records. Yes, correct. I understand that. But looking at the reasonable possibility that exists now, in this case, we really don't know what's in those records, do we? No, sir. So there's no way to determine whether there's a reasonable possibility that such assistance would aid in substantiating the claim. That's the problem here. That's the problem you have. Yes, sir. Yes, Your Honor. That's the problem that I have with them not even attempting to get it or even talking about it. We don't know what's in the records. Now, they did decide this on the basis of a statement that your client made when he was asked about that. And he said, well, there's nothing there. I felt good at that time or something to that nature. His statement, sir, was that they found nothing wrong with me. And that really doesn't inform anybody about the content of those records. We know, the Secretary has acknowledged that they were properly identified within the regulation, which means they know where to get them. They know the... Wouldn't that statement on its face establish some sort of relevancy? It could, depending... I'm not saying it's required. I'm just saying, wouldn't a statement like that prompt the VA to say, well, you know, the veteran here thinks that nothing was found wrong with him, but he's a veteran. He's not the doctor. Yes. Yes, Your Honor. And that's exactly right. He is not the doctor. And the issue, too, is not whether there was something wrong with him. The issue is his condition itself and the history of his condition, or the cause of his condition. And it's well-established, both in the 90s and today, that he has something wrong with him. So for him to say that there's nothing wrong, they found nothing wrong with me, I think is incredible, patently incredible. And the VA can't hang their hat on that to say... Or even less strongly, but perhaps sufficiently, his reporting, and assume it's a completely accurate report that they found nothing wrong, could mean nothing other than, we know you're in terrible pain, and we've written lots and lots of records of symptoms about the symptoms in the records, but we can't find what's wrong with you. The symptom evidence would probably be pretty significant, right? Yes, Your Honor. Is it your position that all medical records that would relate to the actual same symptoms or diagnosis that the person is complaining of would be relevant? Or is it just a case-by-case determination? I would say that in all cases, VA medical records that relate to a claimed condition fall within the duty to assist. And obviously, there are protections in there for harmless error, both at the board and at the CABC. But I think that in any case, when you're applying for benefits from the VA, you need to understand the history and all of the regulations talk about looking at it through the history of the disease. And you can't really be informed unless you have a clear and complete picture. I have another series of questions for you that really just is kind of out of my own curiosity. Can a veteran go and get his own records, medical records in any way in these kinds of proceedings by, I don't know, filing a FOIA request? I know it's not required. I'm just curious. I just don't know how it works. Yes, ma'am. The veteran has access to his or her own records upon request. So how could we be this far along in the process without having the records in hand by now? When they were identified in the 90s, this is a lot of conjecture on my part, but I think that the, obviously we're still in paper records at the time, and they were using the, I've drawn a blank on the term, the VCA did away with the, forgive me, well, they used to have a higher burden prior to under Morton. They used to have a higher burden, and the term has escaped me. And so I think that you had to pretty much prove a nexus before the VA would even look at your claim. But if, I mean, we've been or you've been litigating even the reopening claim for quite a number of years. In answer to Judge Stoll's question, you said, and I was wondering the same thing, we're currently in the situation where we're trying to think about whether records we do not have might have anything to say. Yes. And it's odd that we don't have the records if you could ask for them and get them. It, that's true, however, in this particular case, and I think in a lot of cases, one, they're in Asheville, and the veteran lives in South Carolina. He doesn't have any money to get there. Granted, he could send a form in. The VA already has them, and it's much easier for the VA to get them than it is for the veteran to obtain them and submit them. He submitted medical evidence from many years that he thought was sufficient based on the notice that he was given from the VA, new and material evidence. This, I believe, is new and material evidence. Wouldn't it place an unreasonable burden on a veteran to identify what records a VA has in its possession, and then to go get them and bring them, especially when the statute and the regulation 38 CFR 3159 puts a duty on the VA to assist the veteran in obtaining evidence? Yes, sir, and that was my next point, was that. Let me ask you this question then. When you look at 38 CFR 3.159C3, obtaining records and compensation claims, I see the word relevant spread throughout there. In fact, I think it's in the double digits, but it doesn't say relevant with respect to VA medical records or records of examination or treatment at the non-VA facilities authorized by the VA. This is a non-VA facility, or facilities authorized by the VA. Your argument is that the fact that the word relevant is in the provisions above this provision and the ones below it, but not in this particular provision, that that means that the relevancy standard doesn't apply to this particular provision. What case law do you have that would support that argument? There's a couple cases, sir, that I would cite to. I'm sorry, I thought I had this paper out. Generally speaking, the VA is presumed to have knowledge of, okay, Keen Corps VUS is, I think, our strongest, that when the drafters put a word in one place and not in another, it's presumed to have been intentional. And that's, I think, from a long line of Supreme Court case law that they know what they're doing and they know when they want to say something. They obviously know how to say it, because they said it here. And when they promulgated the duty to assist regulations under other benefits, they included relevant as a descriptor of VA medical records. You're well into your rebuttal time. You're well into rebuttal time. I'll restore a little bit of time for you coming up. Okay, so, Ms. Baker, what about this notion that the word relevant is not in the provision that's at issue here, in the regulatory provision? It's not in the subsection of the provision, but as we explained in our brief, I think it's important to examine this particular provision in the context of the regulatory scheme as a whole and also in context of the statutory scheme as a whole. Aren't you then asking us to insert a limitation or a word in this provision that's simply not there? Your Honor, the limitation, the relevancy limitation is that... Why shouldn't the plain words, the plain meaning of the statute apply here? Why should we import the word relevant into this provision? Because while it's not specifically listed in that subsection, it is in every other aspect. It is in the general provisions. Excuse me. But that, of course, could cut the other way. It can. However, I do think that in this instance, again, to go back to the statutory scheme, the regulatory scheme, it's important to consider the duty in the context of the duty that Congress sought to impose and then the duty that the VA sought to impose upon itself. Well, tell me if I'm understanding this wrong. The statute clearly says relevant. It also says, sets a floor for what the secretary has to get by way of records. So it doesn't say secretary can't do more. It also says the secretary shall implement all this by regulation. You put that together and it seems to me subject to one possibility, the secretary is perfectly entitled to write a regulations that says, for our own records, we'll do more. We get them all. And unless there's something in the federal register in promulgating the regulations or something that tells us Scrivner's error, just a drafting error, the word was supposed to be there. But it's not unreasonable for the secretary to say, our own records, we don't need to put the word relevant in. If I may address your question or your point in two points. First, the Scrivner's error, if you read the federal register that the VA published when it was promulgating these regulations, it's actually clear in the federal register. Is that quoted in your? Yes, it is, Your Honor. What page on your brief? If you could give me one moment, Your Honor. I can more easily provide you the citation to the federal register. I don't have access to that at the moment. I understand. Give me one moment. Unless the page is in the appendix. I'm sorry, Your Honor, it's on page 18. So there, if you look at the explanation of the rule that the VA was attempting to promulgate, there they placed the word relevant before the colon. It is not separately articulated for each of the subparts that follows the colon. So the federal register makes clear that the VA was not intending to impose upon itself a duty greater than that imposed by Congress. And that's particularly important, if I may turn to the second point, is that Congress very clearly stated that the duty to assist. This doesn't really say what, it doesn't say we made a mistake when we didn't particular subsection for describing this one type of medical record. It doesn't say that. It just is something that's like legislative history or regulatory history that's inconsistent with the regulation itself, isn't it? No, it doesn't say that they made a mistake, because I don't believe the VA understood the wording of the regulation and its intentions to be inconsistent at the time that it published. This is the explanation of what it's speaking to others. Again, this is the first publication of the proposed regulation. This did not change when they published the final version of the regulation. Sure, I just thought that you were saying there was something that explained that there was a scrivener's error. No, I did not mean to suggest that. When you say this did not change between the notice of proposed rulemaking and the final, what does the this mean? I'm sorry, the language of this portion, this subsection of the proposed regulation, did not change between the proposed rule and the final rule. Should I assume that language like this block quote from the Federal Register upon the notice of proposed rulemaking does not appear in the Federal Register announcement of the adoption of the rules finally, or you would have quoted it? It does not, no. There was no indication that anybody who read the proposed rule, who commented on the proposed rule, understood that the VA should be doing anything other than what the VA understands it to have been doing. So it was not addressed in the publication of the final rule, no. So the final rule would control here. The language of the final rule, and again, in the text of the regulation, in the text of the subsection. You're citing us to the proposed rulemaking process for your proposition that relevancy matters. And actually, in the final rule, it doesn't matter. They didn't include it. Well, Your Honor, no, I'm sorry. The text of the proposed rule, the text of this subsection, did not change between the proposed rule and the final rule. So this block quote that I've discussed on page 18 of my brief is the VA's explanation of what it is intending to do with the regulation that is at issue here. Well, if they intended to do that, why didn't they just insert the word relevant? That would have made my job a lot easier, Your Honor. I understand that. Maybe it doesn't have, maybe it's non-material then. I mean, it would have made your job easier, and then you would win. But it's not there, so maybe you lose. Well, again, if I may put this in context, both in terms of the regulation. This was the second point to Your Honor's question. Again, Congress explicitly imposed a relevancy requirement on the duty to assist. The purpose of this duty is so that the VA can help veterans, to the extent possible, establish their claim. But it's not a fishing expedition. This is an, it's not an adversarial process. Can I ask you about section 3.159D, the one that talks about, you know, beyond this relevancy issue, it says that the VA can refrain from providing assistance where there is no reasonable possibility that any assistance VA would provide to the claimant would substantiate the claim. How does that factor in here? Well, here this gets to, I think, the second portion of your conversation with Mr. DeWackes. Mr. Sullivan identified these records to some extent. He said he sought treatment in 1984. But he also said there's nothing wrong. Now, he has discussed, well, that could establish a continuity of symptomology, which is one of the elements that is required, that a claimant must require to establish a service connection disability. However, it doesn't address, and this is specifically what the board found in its 1997 opinion, which is page 33 of the joint appendix, considered his testimony that he had made in 19, Mr. Sullivan's testimony he made in 1994, and said, well, yes, he talks about how his back hurt previously. And he says that there are these records. But his subjective assertion of back pain doesn't establish service connection. But the records from the 1984 medical evaluation at VA might add to that evidence. And nobody has ever looked at them and addressed the question of whether they help establish this continuity of symptoms. So that can't be the standard for deciding whether, as a threshold matter, one gets the records. Well, Your Honor, in 1997, the board didn't decide these records were not relevant, or that they were not relevant. And therefore, the VA did not have a duty to obtain them, because they may help establish continuity of symptomology. The board's decision in 1997 was, we understand he continues to complain about back pain. And that continues. But that what these records cannot help him do is establish any sort of service connection. By his own testimony, the doctors didn't find anything wrong with him. But wasn't the position that the reason why he thinks these records are relevant is that it occurred before the other things that the board thought were the cause of the disability, right? So if there's something that shows that the timing is off from what the board thought, why isn't that relevant? Well, Your Honor, he may think that now. But that's not what the record demonstrates. In fact, Mr. Sullivan says, the only time Mr. Sullivan raised these records was in 1994, when he was during the hearing before the VA. And he said, at some point in 1984, he said by his own testimony, he's not sure whether his visit to the Asheville Medical Center predated or postdated his motor vehicle accident, which occurred in July of 1984. And presumably, the records will immediately answer that question. They could, possibly. But what if the veteran had said, I was examined, and the doctors found I had tremendous back pain? Would you have sought the records in? It's not clear whether the VA. Or would you be arguing that a veteran's medical opinion is late testimony and does not have the weight that a doctor's opinion would? Well, again, Your Honor, that is exactly what the board found in its 1997 decision. Again, this is page 33 of the joint appendix. The board said, his testimony of back pain is not competent evidence of a service connection. It is not competent evidence of the cause of his back pain. So while Mr. Sullivan has repeatedly said, well, this could show that my back pain continued through a period of time, the board has found otherwise in a final decision that Mr. Sullivan never repealed. So should the veteran have made a legal conclusion, had a legal opinion as to the effect of his statement? Before the board in 1997 or here today? It seems to me that the VA is up here arguing all the time that a late person's testimony is not worthy of, does not have the same probative weight as a medical opinion. But yet, you're holding the veteran's late testimony how I felt, or how he felt, to do that, to do just that. Again, Your Honor, the decision the board made, and again, it's a final decision. Mr. Sullivan never repealed that decision, was not that he hasn't established continuity of symptomology. It's that he has identified nothing that establishes a service connection. He has identified nothing to show that the cause of the pain about which he has continued to complain for now almost 30 years is related to his service in the military. So there are several, I'm sorry. Let me see if I, I mean, this is a reopening claim. So reopening claims always occur when there's some prior decision. And with the reopening claim, he has to, among other things, show material evidence, something that creates a reasonable possibility of substantiating the claim. I may be a little bit off, but roughly that is the regulatory definition of materiality. And the duty to assist regulation, or maybe even the statute, I guess it's the regulation, says the duty to assist applies to claimants seeking reopening. So here he is saying, I know I have this standard to meet for reopening materiality. There must be some circumstances in which I may be, I must be able to meet it, because that's why we have reopening from previous decisions. Unless the board determines that there is no reasonable possibility that these records, which he's adequately identified as to location and date, would substantiate the claim, the VA has to get those records. And what could be a response to that is a board determination that there really is no reasonable possibility that these could substantiate the claim. And the problem is, we don't have that board decision. That's not correct, Your Honor. We do have that board decision. That is exactly the decision the board made in 1997. I'm looking at page JA33, which you cited, and I don't see where it talks about the Asheville medical record. Could you show me where that is? It doesn't talk about the Asheville medical record specifically, but these records were identified during the course of this round of proceedings. So this was Mr. Sullivan's initial claim for service connection. I just don't see how I'm supposed to look at page JA33 and see that the board made the factual finding that you're asserting about the Asheville medical record when it's not discussed here. Well, because the board looked at the record developed before it as a whole, which includes his testimony about this. And here he talks about, they don't specifically call out this one sentence of testimony, but they talk about all of the information before. They talk about the record as a whole. And here they note that he talks about his pain. He talks about his back pain, but he's identified no records that would connect that back pain to his service connection. Again, all of this information, these records were identified during, so it's his second claim before the board. And I'm sorry, I'm almost out of time. It's his second claim for disability, his first claim for service connection. He identified them then. The board found that there was nothing in the record to establish his claim, to substantiate his claim. And then, oh, I'm sorry, I see I'm out of time. May I briefly? Counselor, you can conclude. I'll let you. OK. If you have a concluding sentence. Yes. The statutory and regulatory scheme are very clear here. The duty to assist is to help, is for the VA to help claimants in an attempt to establish their claim. Congress was clear that their resources were to be targeted toward these types of record. It's not a fishing expedition. It's not to go out to try to obtain every record possible that may or may not have something to do with this claim, that may or may not help him establish his claim. This decision was made in 1997. He never appealed it. Thank you. Mr. DeGioia, if you have two minutes left, or a minute left, I'm going to restore you to two minutes, OK? For your rebuttal. I have three points that I'd like to make. I'd like to start with the statute 5103a sub a. The secretary shall make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim. And I would just like to point out, I think it's quite reasonable for the VA to go and get and look at records that they already have. Especially in the 21st century, they can click a button on their computer and pull up every single VA medical record that's electronic. Granted, these are much older, but I think limiting it to whether or not he's correctly described what the doctors told him, I think is a little, it's reasonable for them to go out and get those. Since your time is short, I realize I'm going to interrupt your second and third points, but why does the determination by the board in 1997 not amount to a determination that whatever those 1984 records may contain, they can't reasonably substantiate the claim? For a couple of reasons, sir.  that the board ever considered continuity of symptoms. And forgive me, but I don't think Shade or Sade was even decided until right around that same time. And so that legal theory wasn't well developed at the board. Number two, they never mentioned those specific VA records. They talked about other records by name, which dealt with a different time frame. But the board never talked about these records. And three, well-grounded claim, which was the term that had left my brain for a minute, you had to first show competent evidence of a nexus between an injury and service. The board in 1997 said, no, it was this car accident that caused it. Therefore, there's no well-grounded claim. The law changed in 2000, as we know, and the well-grounded claim went away forever. And today, now, he just has to show new and material evidence to reopen. And we can't forget that that's where we are. Under the regulation 3156A, and I am out of time. Thank you very much, Kelsey. Thank you, sir.